NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 18-1149 and consolidated cases

U.S. COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

ENVIRONMENTAL DEFENSE FUND, et al.,
Petitioners,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,
Respondents.

Petitions for Review of Actions of the U.S. Environmental Protection Agency

**PROOF BRIEF FOR U.S. ENVIRONMENTAL PROTECTION AGENCY**

Of counsel:

BRIAN DOSTER
U.S. Environmental Protection Agency
Office Of General Counsel
Washington, D.C.

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*

JIN HYUNG LEE
U.S. Department of Justice
Environment & Natural Resources
Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
202.598.7264
jin.hyung.lee@usdoj.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

As required by D.C. Circuit Rule 28(a)(1), Respondents certify:

A.      Parties and amici

All petitioners, respondents, and intervenors are listed in petitioners' opening brief.  Respondents do not anticipate amici in these consolidated cases.

B.      Rulings under review

Under review are the following actions:

- "Project Emissions Accounting Under the New Source Review Preconstruction Permitting Program," 83 Fed. Reg. 13745 (Mar. 30, 2018);

- "Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Project Emissions Accounting," 85 Fed. Reg. 74890 (Nov. 24, 2020);

- "Denial of Petition for Reconsideration and Administrative Stay: 'Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Project Emissions Accounting,'" 86 Fed. Reg. 57585 (Oct. 18, 2021); and

- "Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Regulations Related to Project Emissions Accounting; Withdrawal of Proposed Rule," 90 Fed. Reg. 34206 (July 21, 2025).

C.      Related cases

There are no related cases within the meaning of Circuit Rule 28(a)(1)(C).


                                        /s/ Jin Hyung Lee
                                        JIN HYUNG LEE
                                        Counsel for Respondents

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases ................................. i

Table of Contents ............................................................................. iii

Table of Authorities ...........................................................................v

Glossary ............................................................................................x

Introduction ......................................................................................1

Statement of Jurisdiction ...................................................................3

Issues Presented ................................................................................4

Statutes and Regulations ....................................................................4

Statement of the Case ........................................................................5

     I.      Statutory background .........................................................5

          A.     Air Quality Standards under the Act ...........................5

          B.     New Source Review ...................................................6

     II.     Regulatory background for "modifications" subject to major New Source Review ..........................................................8

          A.     When an "increase" results in a "modification" .........8

          B.     The scope of "any . . . change" in the definition of "modification" .........................................................13

          C.     Recordkeeping requirements to enhance major New Source Review enforcement .......................................14

     III.    Agency proceedings under review .....................................15

Summary of Argument ......................................................................19

Standard of Review ..........................................................................24

Argument................................................................................................25

    I.       Petitioners lack standing for all four petitions for review...................25

          A.      Petitioners lack associational standing. ...................................26

          B.      Petitioners lack organizational standing. ..................................29

    II.     This Court lacks jurisdiction over Petitioners' statutory argument regarding the substantially-related standard.........................................30

    III.    The Accounting Rule provides the best reading of the statutory term "increases." .......................................................................................33

          A.      The Accounting Rule squarely aligns with the plain text of the term "increases." ...............................................................37

          B.      The Accounting Rule best balances major New Source Review's goal of preserving air quality and promoting economic growth.......................................................................45

          C.      Petitioners' remaining statutory arguments lack merit.............48

    IV.    EPA reasonably addressed circumvention concerns...........................52

          A.      Petitioners forfeited their argument regarding EPA's decision to not mandate the substantially-related standard; in any event, EPA reasonably explained its decision. ..............52

          B.      EPA reasonably explained that retaining its recordkeeping requirements was appropriate. ..................................................54

Conclusion ............................................................................................................58

Certificates of Compliance and Service................................................................59

# TABLE OF AUTHORITIES

**Cases**

*Ala. Power Co. v. Costle,*
    636 F.2d 323 (D.C. Cir. 1979)................................. 1, 9, 34, 35, 37, 38, 39, 44, 52

*Cal. Cmtys. Against Toxics v. EPA,*
    934 F.3d 627 (D.C. Cir. 2019)..................................................................32

*Clean Wis. v. EPA,*
    964 F.3d 1145 (D.C. Cir. 2020)................................................................58

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.,*
    928 F.3d 95 (D.C. Cir. 2019)...................................................................25

*Fed. Express Corp. v. U.S. Dep't of Com.,*
    39 F.4th 756 (D.C. Cir. 2022) .................................................................57

*Finnbin, LLC v. Consumer Prod. Safety Comm'n,*
    45 F.4th 127 (D.C. Cir. 2022) .................................................................25

*Food & Water Watch, Inc. v. Vilsack,*
    808 F.3d 905 (D.C. Cir. 2015)..................................................................30

*Iowaska Church of Healing v. Werfel,*
    105 F.4th 402 (D.C. Cir. 2024) ...............................................................49

*Jazz Pharms., Inc. v. Kennedy,*
    141 F.4th 254 (D.C. Cir. 2025) ...............................................................24

*LaShawn A. v. Barry,*
    87 F.3d 1389 (D.C. Cir. 1996) (en banc) .........................................................44

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024) ............................................................... 24, 25, 49

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ...........................................................................25

*Med. Waste Inst. & Energy Recovery Council v. EPA,*
    645 F.3d 420 (D.C. Cir. 2011)............................................................. 31, 32

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ................................................................ 24, 25

*NetworkIP, LLC v. FCC*,
  548 F.3d 116 (D.C. Cir. 2008)..............................................32

*New Jersey v. EPA*,
  989 F.3d 1038 (D.C. Cir. 2021)........................... 6, 15, 54, 57

*New York v. EPA* (*New York I*),
  413 F.3d 3 (D.C. Cir. 2005)................... 1, 11, 37, 38, 43, 44, 45

*New York v. EPA* (*New York II*),
  443 F.3d 880 (D.C. Cir. 2006)...............................................51

*NLRB v. Bell Aerospace Co. Div. of Textron Inc.*,
  416 U.S. 267 (1974) .............................................................54

*NRDC v. EPA*,
  559 F.3d 561 (D.C. Cir. 2009)..............................................53

*NRDC v. EPA*,
  571 F.3d 1245 (D.C. Cir. 2009)............................................48

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947) ....................................................... 50, 54

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) .............................................................24

*Twin Rivers Paper Co. v. SEC*,
  934 F.3d 607 (D.C. Cir. 2019)......................... 25, 26, 53, 57

*Valero Energy Corp. v. EPA*,
  927 F.3d 532 (D.C. Cir. 2019)..................................... 32, 33

**Statutes**

42 U.S.C. §§ 7401-7671q ...........................................................5

42 U.S.C. § 7409 ........................................................................5

42 U.S.C. § 7410 ........................................................................5

42 U.S.C. § 7410(a) ...............................................................................5

42 U.S.C. § 7410(a)(2)(C) ........................................... 1, 6, 37, 47

42 U.S.C. § 7410(k)(3) ...........................................................................5

42 U.S.C. § 7411(a)(4) ................................................. 1, 8, 33, 37

42 U.S.C. § 7416 ...................................................................................7

42 U.S.C. §§ 7470-7515 .......................................................................5

42 U.S.C. §§ 7470-79 ...........................................................................7

42 U.S.C. § 7470 ...................................................................................6

42 U.S.C. § 7475(a) ...............................................................................7

42 U.S.C. § 7479(1) ...............................................................................7

42 U.S.C. § 7501-15 ..........................................................................5, 7

42 U.S.C. § 7502(a) ...............................................................................5

42 U.S.C. § 7502(c)(5) ...........................................................................7

42 U.S.C. § 7602(j) ................................................................................7

42 U.S.C. § 7607(b)(1) ................................... 4, 21, 31, 32, 42, 44, 56

42 U.S.C. § 7607(d)(7)(A) ................................................... 25, 54

42 U.S.C. § 7607(d)(7)(B) ............................................... 18, 48, 49, 52

42 U.S.C. § 7607(d)(9)(A) ...................................................................24

**Code of Federal Regulations**

40 C.F.R. § 51.160-164 .........................................................................6

40 C.F.R. § 51.160(c) .............................................................................6

40 C.F.R. § 51.165-166 .........................................................................7

40 C.F.R. § 51.166(b)(2) .......................................................................7

40 C.F.R. § 52.21(a)(2) .................................................................................8

40 C.F.R. § 52.21(a)(2)(i) ............................................................................10

40 C.F.R. § 52.21(a)(2)(iii) ...........................................................................8

40 C.F.R. § 52.21(a)(2)(iv)(A) ........................................................ 2, 12, 28

40 C.F.R. § 52.21(a)(2)(iv)(B) ........................................ 2, 11, 14, 45, 55

40 C.F.R. § 52.21(a)(2)(iv)(C) ............................................... 11, 12, 43

40 C.F.R. § 52.21(a)(2)(iv)(G) .....................................................................16

40 C.F.R. § 52.21(b)(2) .................................................................................8

40 C.F.R. § 52.21(b)(3) .................................................................................8

40 C.F.R. § 52.21(b)(3)(i) ...................................................................... 13, 40

40 C.F.R. § 52.21(b)(3)(i)(A)-(B) ......................................................... 12, 40

40 C.F.R. § 52.21(b)(3)(i)(A) ......................................................................36

40 C.F.R. § 52.21(b)(3)(i)(B) ........................................ 2, 10, 13, 39, 42

40 C.F.R. § 52.21(b)(3)(ii) ...........................................................................10

40 C.F.R. § 52.21(b)(23) ...............................................................................8

40 C.F.R. § 52.21(b)(41) ..................................................................... 11, 12, 43

40 C.F.R. § 52.21(b)(41)(i) ...........................................................................11

40 C.F.R. § 52.21(b)(41)(ii)(A) ............................................................. 11, 55

40 C.F.R. § 52.21(b)(48) ....................................................................... 12, 43

40 C.F.R. § 52.21(b)(48)(i) ...........................................................................11

40 C.F.R. § 52.21(b)(48)(ii) ..........................................................................11

40 C.F.R. § 52.21(b)(52) ...............................................................................10

40 C.F.R. § 52.21(r)(6) .................................................................................14

40 C.F.R. § 52.21(r)(6)(vi)..................................................................................15

**Federal Register**

45 Fed. Reg. 52676 (Aug. 7, 1980).................................... 9, 10, 12, 35, 36, 42, 44

67 Fed. Reg. 80186 (Dec. 31, 2002)............................... 6, 10, 11, 12, 14, 35, 36, 43

72 Fed. Reg. 72607 (Dec. 21, 2007) ....................................................................14

74 Fed. Reg. 2376 (Jan. 15, 2009) .......................................................................13

76 Fed. Reg. 38748 (July 1, 2011).........................................................................7

83 Fed. Reg. 57324 (Nov. 15, 2018) ..................................................... 13, 14, 53, 54

84 Fed. Reg. 39244 (Aug. 19, 2019) ............................................................ 17, 52

85 Fed. Reg. 74890 (Nov. 24, 2020) ........... 2, 3, 6, 8, 16, 17, 18, 30, 31, 33, 34, 36, 38, 39, 44, 45, 46, 47, 49, 50, 55, 56

86 Fed. Reg. 57585 (Oct. 18, 2021)......................................................................18

89 Fed. Reg. 36870 (May 3, 2024) .............................................................. 19, 57

90 Fed. Reg. 21232 (May 19, 2025) ............................................................ 33, 54

90 Fed. Reg. 34206 (July 21, 2025)............................................................. 19, 57

# GLOSSARY

| | |
|---|---|
| 2018 Aggregation Action | Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Aggregation; Reconsideration, 83 Fed. Reg. 57324 (Nov. 15, 2018) |
| Accounting Memo | Project Emissions Accounting Under the New Source Review Preconstruction Permitting Program Memorandum (March 13, 2018), EPA-HQ-OAR-2022-0391-0007, notice of which appeared in the Federal Register at 83 Fed. Reg. 13745 (Mar. 30, 2018), and challenged by Petitioners in Case No. 18-1149 |
| Accounting Rule | Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Project Emissions Accounting, 85 Fed. Reg. 74890 (Nov. 24, 2020), challenged by Petitioners in Case No. 21-1039 |
| Act | Clean Air Act, 42 U.S.C. §§ 7401-7671q |
| Br. | Petitioners' Brief |
| EPA | U.S. Environmental Protection Agency |
| JA | Joint Appendix |
| Reconsideration Denial | Denial of Petition for Reconsideration and Administrative Stay: "Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Project Emissions Accounting," 86 Fed. Reg. 57585 (Oct. 18, 2021), challenged by Petitioners in Case No. 21-1259 |
| RTC | Response to Comments Document on Proposed Rule: "Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Project Emissions Accounting" – 84 FR 39244, August 9, 2019, EPA-HQ-OAR-2018-0048-0099 |
| Withdrawal Notice | Prevention of Significant Deterioration (PSD) and Nonattainment New Source Review (NNSR): Regulations Related to Project Emissions Accounting; Withdrawal of |

Proposed Rule, 90 Fed. Reg. 34206 (July 21, 2025), challenged by Petitioners in Case No. 25-1176

## INTRODUCTION

The Clean Air Act's New Source Review program involves a preconstruction review process to regulate the modification and construction of certain stationary sources of air pollution. 42 U.S.C. § 7410(a)(2)(C). This program ensures that such activities do not adversely affect a state's ability to meet federal air-quality standards. *Id.* In enacting this program, Congress intended EPA to balance air-quality preservation with economic growth. *New York v. EPA* (*New York I*), 413 F.3d 3, 23 (D.C. Cir. 2005). These consolidated cases concern the issue of when a source undergoes a "modification" such that it must obtain a major source permit that requires additional emission controls.

The Act defines "modification" as (1) any physical or operational change which (2) "increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted." 42 U.S.C. § 7411(a)(4). Because the Act requires major-source permitting only when such changes might increase pollution, an "increase" must consider the change proposed and "the net effect of all the steps involved in that change." *Ala. Power Co. v. Costle*, 636 F.2d 323, 401 (D.C. Cir. 1979). Not every action that increases emissions counts as a "modification." This Court has recognized two exceptions: if the increases are (1) de minimis (i.e., below a certain threshold) or (2) offset by contemporaneous decreases of pollutants. *Id.* at 400-01.

EPA applied these foundational holdings in promulgating a two-step process for determining whether a proposed change results in an "increase" in emissions. First, a source determines whether the change will result in a more than de minimis increase in emissions (Step 1). 40 C.F.R. § 52.21(a)(2)(iv)(B). If the answer is yes, then the source can avoid major New Source Review only if the change's increases can be offset by other contemporaneous changes (Step 2). *Id.* § 52.21(a)(2)(iv)(A), (b)(3)(i)(B). If the sum of the emissions calculated at Step 1 and Step 2 results in more than a de minimis increase in air pollution, then the source must obtain a major-source permit before construction. In the Accounting Memo, EPA-HQ-OAR-2018-0048-0008, and Accounting Rule, 85 Fed. Reg. 74890 (Nov. 24, 2020), EPA clarified that Step 1 considers both increases and decreases in emissions from the proposed change.

Petitioners seek review of those actions, the resulting denial of their petition for reconsideration of the Accounting Rule ("Reconsideration Denial"), and the notice withdrawing a proposed rule to revise the Accounting Rule ("Withdrawal Notice"). However, their opening brief challenges only the Accounting Rule (and Accounting Memo by association). Thus, this Court should deny their petitions for review of the Reconsideration Denial and the Withdrawal Notice outright. This Court should dismiss their petitions for review of the Accounting Memo and Accounting Rule because Petitioners lack standing. Petitioners' own proffered

evidence contradicts their assertions of harm and does not demonstrate that their alleged harms would be redressed by vacating the Accounting Rule. Further, Petitioners' statutory challenge regarding EPA's non-binding standard for determining the scope of a "change" is unreviewable because that standard was established in a prior, unchallenged action that was not final.

If this Court proceeds to the merits, it should uphold EPA's actions because the clarified Step 1 provides the best reading of the Act. As required under the plain text of "modification," the clarified Step 1 analysis ensures that only those changes that actually increase emissions are subject to major New Source Review. Accounting Rule, 85 Fed. Reg. at 74897/2. And the clarified Step 1 best achieves the purpose of major New Source Review because it incentivizes sources to include emission-reducing activities as a component of their proposed change. *Id.* at 74896/1. Further, EPA provided reasoned responses to the comments it received on the Accounting Rule.

The Court should dismiss or deny the petitions for review.

## STATEMENT OF JURISDICTION

The Court lacks jurisdiction because Petitioners lack standing. *See* Arg. I. Additionally, this Court lacks jurisdiction over Petitioners' statutory argument (at Br. 59-61) regarding EPA's substantially-related standard because that argument is untimely and in any event, that standard does not constitute a final agency action.

*See* Arg. II. EPA does not contest that the Court would otherwise have jurisdiction over these challenges under 42 U.S.C. § 7607(b)(1).

## ISSUES PRESENTED

The threshold issues are:

1. Whether Petitioners lack standing; and

2. Whether this Court lacks jurisdiction to address Petitioners' statutory challenges to EPA's substantially-related standard, which creates no binding legal consequence and was first established in a different, uncontested 2018 action for which the judicial-review deadline has long passed.

If the Court were to go further, the merits issues are:

3. Whether the Accounting Rule reflects the best reading of the term "increases" in the statutory definition of "modification"; and

4. Whether EPA reasonably addressed comments alleging improper circumvention of major New Source Review that were raised during the public-comment period.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations appear in the addendum to this brief, except for the following, which appear in Petitioners' addendum: 42 U.S.C. §§ 7411(a), 7475, 7479, 7501; 40 C.F.R. §§ 51.165-166, 52.21.

**STATEMENT OF THE CASE**

## I.     Statutory background

### A.     Air Quality Standards under the Act

The Act, 42 U.S.C. §§ 7401-7671q, directs EPA to promulgate and periodically review federal air-quality standards for certain pollutants that set forth maximum concentrations of pollutants permitted in the air. *Id.* § 7409. Once EPA sets a federal air-quality standard, states must adopt (and EPA must review and approve) State Implementation Plans that are adequate to implement, maintain, and enforce the standards. *Id.* § 7410(a), (k)(3).

If a state has areas that exceed federal air-quality standards, EPA designates those areas as "nonattainment," and the state must submit a State Implementation Plan for attaining the standards by the statutory attainment deadline. *Id.* § 7502(a). If a state fails to attain by the applicable deadline, those areas are reclassified to higher classifications and subject to increasingly stringent emissions-reduction requirements. *Id.* §§ 7501-15. Congress enacted multiple provisions in the Act to help ensure states achieve and maintain federal air-quality standards. *Id.* §§ 7410, 7470-7515. These include several provisions establishing the New Source Review program.

**B.      New Source Review**

The Act requires each State Implementation Plan to include a New Source Review program that regulates the construction and modification of any covered stationary source. *Id.* § 7410(a)(2)(C). Among its goals, this preconstruction review process seeks to ensure that federal air-quality standards are met, maximize opportunities for economic development consistent with the preservation of clean air, and ensure that any decision to increase air pollution is made after full public consideration of the consequences of such a decision. *Id.* §§ 7410(a)(2)(C), 7470; 67 Fed. Reg. 80186, 80187/2-3 (Dec. 31, 2002). The New Source Review program has two components—minor and major.

**1.      Minor New Source Review**

Minor New Source Review applies to stationary sources that do not emit over the statutory thresholds for "major sources" and to modifications that are not subject to major New Source Review permitting. *See* Accounting Rule, 85 Fed. Reg. at 74892/1; *New Jersey v. EPA*, 989 F.3d 1038, 1043 (D.C. Cir. 2021). Federal regulations establish minimum requirements for state minor New Source Review programs. 40 C.F.R. §§ 51.160-164. Among them, states must require minor source permit applicants to provide information to the reviewing authority regarding the facility at issue, its emissions, and its impact on air quality. *Id.* § 51.160(c). Minor New Source Review permits may be used to cap emissions below the major source

threshold so that a new or modified facility would not trigger major New Source Review. *See* 76 Fed. Reg. 38748, 38769/2-3 (July 1, 2011).

### 2. Major New Source Review

Major New Source Review applies to new or modified "major" stationary sources, which are those with emissions that exceed thresholds established in the Act. 42 U.S.C. §§ 7475(a), 7479(1), 7502(c)(5), 7602(j). Major New Source Review comprises two programs. The Prevention of Significant Deterioration program applies to sources in areas that do not exceed federal air-quality standards, *id.* §§ 7470-79, while the nonattainment New Source Review program applies in areas that exceed the standards, *id.* §§ 7501-15. As with minor New Source Review, EPA regulations establish minimum requirements for major New Source Review programs, but these regulations are more detailed. 40 C.F.R. §§ 51.165-166. States have discretion to impose more stringent requirements in their State Implementation Plans or individual permits so long as such requirements are consistent with the Act. 42 U.S.C. § 7416; *see also, e.g.*, 40 C.F.R. § 51.166(b)(2).

Major New Source Review applies when a new major stationary source is constructed or when an existing major stationary source makes a change that increases emissions by more than the de minimis thresholds set forth in regulations.

40 C.F.R. § 52.21(a)(2), (b)(2), (b)(3), (b)(23).[1] If a source is subject to major New Source Review, it must obtain a permit before construction that includes limits on emissions based on installing pollution-control equipment and other factors. *Id.* § 52.21(a)(2)(iii). While all newly constructed major sources must obtain a major source permit, not all changes at an existing major source require a major source permit. Under the Act, a major source permit is required if an existing major source makes a "modification," which is defined as "any . . . change . . . which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted." 42 U.S.C. § 7411(a)(4).

## II. Regulatory background for "modifications" subject to major New Source Review

### A. When an "increase" results in a "modification"

EPA's regulations governing when a change results in an emission "increase," such that a "modification" occurs, have been extensively litigated. This Court has clarified the meaning of the term "increase," and that precedent forms the foundation for several parts of the regulations.

---

[1] The regulations at 40 C.F.R. § 52.21 implement the federal Prevention of Significant Deterioration program, which applies in states that lack an EPA-approved plan and Indian Country. These provisions are representative of analogous provisions contained in regulations governing other major New Source Review programs. *See* Accounting Rule, 85 Fed. Reg. at 74891 n.3. This brief focuses on the provisions at 40 C.F.R. § 52.21 for convenience.

In *Alabama Power*, this Court considered the statutory purpose of major New Source Review and held that "increases" must be based on the "change proposed for a plant" and "the net effect of all the steps involved in that change." 636 F.2d at 401. This Court referred to this broad scope as the "bubble concept." *Id.* If a source "increase[s] pollution, [it] will generally need a permit" unless the increases are de minimis or "the increases are offset by contemporaneous decreases of pollutants." *Id.* at 400. As for the second of these two exceptions, EPA has "discretion, within reason, to define which changes are substantially contemporaneous" so long as the offsets occur "within the same source." *Id.* at 402.

Following *Alabama Power*, EPA revised its major New Source Review applicability regulations in 1980. 45 Fed. Reg. 52676 (Aug. 7, 1980). EPA defined a statutory "modification" as a "major modification" and further defined "major modification" as a change that would result in a "significant net emissions increase" of one or more regulated pollutants and would constitute a "modification" under the Act. *Id.* at 52698/2. The term "significant" applied the de minimis exception recognized in *Alabama Power*. *Id.* EPA set a numeric threshold for each pollutant to determine whether emissions would be "significant." *Id.* at 52737/3. The term "net emissions increase" applied the "bubble concept" and offset exception recognized in *Alabama Power*. *Id.* at 52736/1. A "net emissions increase" resulted if the sum of "[a]ny increase in actual emissions from a particular . . . change" and

"[a]ny other increases and decreases in actual emissions at the source that are contemporaneous with the particular change and are otherwise creditable" exceeded zero.  *Id.* (codified at 40 C.F.R. § 52.21(b)(3)(i)(B)). EPA defined "contemporaneous" as a five-year period.  *Id.* (codified at 40 C.F.R. § 52.21(b)(3)(ii)).

In 2002, EPA revised its regulations in several key respects.  67 Fed. Reg. 80186 (Dec. 31, 2002).  EPA added a definition of "project" that serves as  a shorthand for the statutory phrase "a physical change in, or change in the method of operation of," a source.  *Id.* at 80190/2, 80279/1 (codified at 40 C.F.R. § 52.21(b)(52)).  EPA clarified that determining whether a source undergoes a "major modification" (and is therefore subject to major New Source Review) is a two-step process.  *Id.* at 80190/2.  First, a source analyzes whether the change at issue would result in a "significant emissions increase."  *Id.* at 80190/2, 80275/3 (codified at 40 C.F.R. § 52.21(a)(2)(i)).  If so, then a source proceeds to the second step—analyzing whether the project results in a "significant net emissions increase"—to determine if it needs to undergo major New Source Review.  *Id.*

EPA also revised its regulations on how emission increases resulting from a project are calculated within Step 1. *Id.* at 80190/2.  For a modification of an existing unit, sources may calculate if there is a "significant emissions increase" by projecting, before construction begins, the emissions that will result after the change

and then subtracting those emissions from the baseline of actual emissions prior to the change. *Id.* at 80275/1-2 (codified at 40 C.F.R. § 52.21(a)(2)(iv)(B), (C)). Under these revisions, which remain applicable today, the projected emission increase from a project is the maximum annual rate in any one of the five years following the date the unit resumes regular operation.[2] *Id.* at 80196/2, 80277/2 (codified at 40 C.F.R. § 52.21(b)(41)(i)). This rate is calculated based on consideration of "all relevant information," including historical operations at the source and the company's expected business activity. *Id.* at 80277/2-3 (codified at 40 C.F.R. § 52.21(b)(41)(ii)(A)). Generally, the baseline is the average annual rate of emissions of any two consecutive years during the ten years prior to the change. *Id.* at 80195/1-2, 80278/1-2 (codified at 40 C.F.R. § 52.21(b)(48)(i), (ii)).

Thus, emission increases at Step 1 are generally calculated as the "sum of the difference" of projected emissions based on a five-year look-forward period and baseline emissions based on a ten-year lookback period. 40 C.F.R. § 52.21(a)(2)(iv)(C). This Court upheld EPA's method of applying a ten-year lookback period for calculating baseline emissions. *New York I*, 413 F.3d at 22-27.

---

[2] In certain circumstances, sources may consider a ten-year range. 67 Fed. Reg. at 80277/2; 40 C.F.R. § 52.21(b)(41).

Under the 2002 rule, Step 2 applied EPA's definition of "net emissions increase," which remained in substantially the same form as was in 1980.[3] This definition still required summing the emissions increase from "a particular . . . change" and "[a]ny other increases and decreases in actual emissions at the major stationary source that are contemporaneous with the particular change and are otherwise creditable." 40 C.F.R. § 52.21(b)(3)(i)(A)-(B).

Accordingly, under EPA's regulations since 2002, the two-step process generally proceeds as follows:

At Step 1, the source calculates the projected actual emissions after the change based on a five-year look-forward period. *Id.* § 52.21(b)(41). The source also calculates its baseline actual emissions based on a ten-year lookback period. *Id.* § 52.21(b)(48). Then the source takes the "sum of the difference" of the project's projected actual emissions and the source's baseline actual emissions. *Id.* § 52.21(a)(2)(iv)(C). If the sum exceeds the significance threshold, then the source proceeds to Step 2 to determine if it is subject to major New Source Review. *Id.* § 52.21(a)(2)(iv)(A).

At Step 2, the source accounts for emissions from "other" changes at the source that occurred during a contemporaneous timeframe and are creditable. *Id.*

---

[3] The 2002 rule added language on the method for calculating "net emissions increase." *Compare* 45 Fed. Reg. at 52736/1 *with* 67 Fed. Reg. at 80275/3-76/1.

§ 52.21(b)(3)(i)(B). Then the source sums those other emissions with those calculated at Step 1. If the result exceeds the significance threshold, then the source must obtain a major source permit. *Id.* § 52.21(b)(3)(i).

**B. The scope of "any . . . change" in the definition of "modification"**

EPA's definition of a "project" raised questions regarding the scope of what constitutes a "project." *See* 74 Fed. Reg. 2376, 2377/2 (Jan. 15, 2009). Thus, in a 2009 action, EPA enumerated several principles to guide regulated entities in determining the scope of their project. *Id.* at 2377/3. Among them, EPA explained that a "project" should include those activities with a substantial relationship to one another, either from a technical or an economic standpoint. *Id.* In other words, such substantially-related activities should be aggregated into a source's "project." *Id.* In enumerating these principles, EPA did not revise its regulations. *Id.*

Although its 2009 action contained no binding requirements, EPA opened a proceeding to reconsider it, which ultimately ended with a 2018 Aggregation Action. 83 Fed. Reg. 57324 (Nov. 15, 2018). In that action, EPA affirmed its 2009 action and stated that the scope of a "project" for purposes of calculating "increases" under Step 1 should be based on a substantially-related standard. *Id.* at 57330/3-31/1. Like its 2009 action, EPA did not codify this substantially-related standard into its major New Source Review applicability regulations and continued to provide permitting authorities discretion to define projects on case-specific and fact-dependent bases.

13

*Id.* at 57332/3-33/1.  As EPA reasoned, "it is inherently difficult to establish a bright line standard" because of the case-specific nature of a project determination.  *Id.* at 57331/1.  Thus, "[s]uch a standard may be reasonable when conducting an evaluation of project scope in one situation, but could prove to be unreasonable or unworkable when applied in other situations."  *Id.*  No party challenged EPA's 2018 Aggregation Action.

## C. Recordkeeping requirements to enhance major New Source Review enforcement

In 2002, EPA considered requiring projected actual emissions to function as an enforceable limit but declined to do after concluding it already had sufficient enforcement authority under its regulations and the Act.  67 Fed. Reg. at 80204/1.  EPA revised its regulations to make clear that "[r]egardless of any such preconstruction projections, a major modification results if the project causes a significant emissions increase and a significant net emissions increase."  *Id.* at 80275/2 (codified at 40 C.F.R. § 52.21(a)(2)(iv)(B)).

EPA also promulgated recordkeeping requirements for sources that project de minimis increases in emissions but nonetheless have a "reasonable possibility" that their project could result in a significant emissions increase.  *Id.* at 80204/2, 80279/1 (codified at 40 C.F.R. § 52.21(r)(6)).  A "reasonable possibility" exists when the projected actual emissions are 50% or more of the significance level for a pollutant.  72 Fed. Reg. 72607, 72609/3, 72617/2 (Dec. 21, 2007) (codified at 40 C.F.R.

§ 52.21(r)(6)(vi)).  This Court upheld EPA's "reasonable possibility" trigger for the reporting obligation, concluding that EPA reasonably explained that the 50% value balanced the ease of enforcement with avoidance of unduly burdensome requirements.  *New Jersey*, 989 F.3d at 1051.

## III. Agency proceedings under review

In 2018, EPA recognized uncertainty remained under its regulations with respect to whether Step 1 accounts solely for increases or both increases and decreases from a proposed project. *See* Accounting Memo 1, JA____.  EPA addressed this issue in the Accounting Memo, which read its existing regulations as allowing both increases and decreases from a proposed project to be considered at Step 1 and disavowed a prior contrary statement.  *Id.*  In doing so, EPA described how the text of the Act and its existing regulations supported this interpretation. EPA explained that it is "[c]entral" to the Act's definition of "modification" that there "must be a causal link between the physical or operational change at issue – i.e. the 'project' – and any change in emissions that may ensue."  *Id.* at 6, JA____.  Thus, EPA concluded that "it is necessary to account for the full and direct effect of the proposed change itself."  *Id.*

In 2020, EPA revised its regulations in the Accounting Rule through notice-and-comment rulemaking to clarify that Step 1 includes accounting for both increases and decreases of a proposed project.  EPA added a provision expressly

providing that the "sum of the difference," as applied for calculating emissions increases at Step 1, includes "both increases and decreases in emissions." Accounting Rule, 85 Fed. Reg. at 74895/3, 74909/1 (codified at 40 C.F.R. § 52.21(a)(2)(iv)(G)).

As in the Accounting Memo, EPA determined that this clarification provides the "best reading" of the Act's definition of modification, specifically the term "increases." *Id.* at 74899/3. EPA reasoned that this clarified Step 1—by accounting for the full scope of emissions projected from a project—ensures that major New Source Review applies only when the proposed project would actually result in a non-de minimis emission increase. *Id.* at 74894 n.48, 74899/3.

EPA also determined that the clarified Step 1 was "consistent with the congressional intent for the [New Source Review] program, which is to ensure environmental protection while allowing for economic growth." *Id.* at 74896/2. EPA reasoned that the clarified Step 1 would not compromise environmental protection or economic growth, because there was evidence that this clarification would encourage projects that result in an overall decrease in emissions. *Id.* at 74896/1. EPA received comments describing how accounting for both increases and decreases in emissions from a proposed project incentivizes sources to design projects that include emissions decreases and pollution controls. *Id.* at 74896/3. Conversely, despite asking for evidence during the comment period on the proposed

rule, EPA received none that demonstrated that the Accounting Rule would result in an increase in overall emissions or improper circumvention of major New Source Review by permit applicants. *Id.* at 74896/2-97/1.

Nonetheless, EPA responded to comments raising unsubstantiated concerns regarding alleged improper circumvention of major New Source Review. EPA explained that applying the substantially-related standard from its 2018 Aggregation Action alleviates concerns that a source would under- or over-aggregate activities to avoid major New Source Review. *Id.* at 74900/2. While EPA requested comments in its proposal to the Accounting Rule on whether it should require sources to apply the substantially-related standard, EPA received none regarding whether this standard should be imposed by regulation. *See* 84 Fed. Reg. 39244, 39251/1 (Aug. 9, 2019) (proposed rule); Reconsideration Denial Letter 4-5, EPA-HQ-OAR-2018-0048-0105, JA____. Thus, EPA did not codify the substantially-related standard in the Accounting Rule.

EPA also explained that previously promulgated recordkeeping requirements continued to sufficiently guard against major New Source Review circumvention. Accounting Rule, 85 Fed. Reg. at 74902/3-03/1. EPA reasoned that the Accounting Rule only clarified existing regulations on how to calculate projected emissions and did not change the requirement that all projections must be based on all relevant information. *Id.* So a source could not arbitrarily project emissions below the level

that would trigger recordkeeping requirements. *Id.* Additionally, EPA explained that a major modification results if the actual emissions in fact exceed the significance threshold. *Id.* at 74903/1; Accounting Rule Resp. to Comments ("RTC") 96, EPA-HQ-OAR-2018-0048-0099, JA____. Thus, a source that underestimates its emissions may be subject to civil or criminal liability. RTC 96, JA____. Given these disincentives, EPA had no reasonable basis to adopt greater skepticism of projected decreases or to treat projected emission decreases differently from projected emissions increases. *See* Accounting Rule, 85 Fed. Reg. at 74902/3-03/1. EPA further reasoned that other records, available through a state's minor New Source Review program, would support compliance with major New Source Review. *Id.* at 74903/1.

Soon after EPA promulgated the Accounting Rule, Petitioners sought mandatory reconsideration under the Act. 42 U.S.C. § 7607(d)(7)(B). To grant mandatory reconsideration, Petitioners must demonstrate that it was "impracticable" to raise their objection within the public comment period or that the grounds for such objection arose after the period for public-comment but within the judicial-review period. *Id.* EPA determined that Petitioners failed to satisfy this impracticability requirement and denied the reconsideration request. Reconsideration Denial, 86 Fed. Reg. 57585, 57586/1 (Oct. 18, 2021); *see also generally* Reconsideration Denial Letter, JA____-__.

However, finding that the issues raised in the reconsideration petition warranted further consideration, EPA initiated a rulemaking to propose revisions to the Accounting Rule. 89 Fed. Reg. 36870, 36873/2 (May 3, 2024). Upon considering comments received on that proposal, EPA determined that the proposed revisions were unnecessary and withdrew its proposed rule. Withdrawal Notice, 90 Fed. Reg. 34206, 34207/1 (July 21, 2025). EPA reasoned that the proposed revisions, if finalized, would impose additional burdens on regulated entities and permitting authorities that could disincentivize or delay environmentally and economically beneficial projects. *Id.* at 34207/1-2. EPA also identified no examples of sources inappropriately aggregating changes to circumvent major New Source Review. *Id.* at 34207/2.

Petitioners here seek review of the Accounting Memo (Case No. 18-1149), Accounting Rule (Case No. 21-1039), Reconsideration Denial (Case No. 21-1259), and the Withdrawal Notice (Case No. 25-1176).

### SUMMARY OF ARGUMENT

This Court should dismiss or deny the petitions for multiple reasons.

I.     Petitioners lack standing.  Petitioners lack standing to challenge the Reconsideration Denial or the Withdrawal Notice because they allege no harm from those actions and seek no relief as to those actions.  This Court should deny those petitions outright.  Indeed, Petitioners make no argument as to why either action was

unlawful and take issue with only the Accounting Rule (and by association the Accounting Memo). But they fail to establish standing to challenge those too.

Petitioners' members purport to demonstrate standing by alleging that they will suffer or are suffering from greater air pollution due to modifications at major sources that will or have applied the clarified Step 1 to avoid major New Source Review. For proposed modifications, Petitioners fail to demonstrate that those sources will apply the clarified Step 1 and that doing so will allow those sources to avoid major New Source Review. As for approved modifications, those sources obtained permits for their modifications, and those permits include emission-control requirements. Petitioners fail to demonstrate that these sources' permits would have imposed greater emission-control requirements had those projects been subject to major New Source Review. Further, Petitioners fail to demonstrate that these modifications would have been subject to major New Source Review absent the Accounting Rule because they ignore the fact that Step 2 still exists. Thus, the projects that Petitioners identify may well have not been subject to major New Source Review had the sources proceeded to Step 2. Accordingly, Petitioners do not establish redressability for their alleged air-quality injury.

Petitioners' members also cannot demonstrate standing for their alleged injury of not being able to comment on proposed modifications because they were able to, and indeed did, comment on proposed modifications that obtained permits.

20

Lastly, Petitioners fail to establish organizational standing to challenge the Accounting Rule's recordkeeping requirements. Despite the Accounting Rule being in effect for five years, Petitioners do not attest that they spent resources collecting air-pollution data that otherwise would have been provided by major sources pursuant to the recordkeeping requirements.

II. Petitioners' statutory challenge regarding the substantially-related standard is unreviewable for two reasons. First, that challenge is time-barred under the Act's judicial-review provision, 42 U.S.C. § 7607(b)(1), because EPA established the standard in 2018 and did not reopen the elements of the standard here. Second, this non-binding standard is not a final action because, as Petitioners acknowledge, this standard imposes no legal consequence.

III. Even if Petitioners establish standing, this Court should uphold the challenged actions. The statutory question here is whether the clarification to Step 1—accounting for both increases and decreases of a proposed project—is the best reading of the term "increases" in the statutory definition of "modification." The answer is yes. This Court's precedents, which considered the plain text, statutory purpose, and congressional intent, holds that a "modification" results only if the change is projected to result in an actual increase in emissions. Accordingly, to calculate "increases," sources must account for the emissions impacts of a change by considering the net effect of all the steps involved in that change. EPA did that

here with the Accounting Rule. EPA clarified Step 1 so that all components involved in a change, not just components that increase emissions, are considered when calculating whether a proposed project will result in an emissions increase.

The clarified Step 1 also advances Congress's directive that major New Source Review balance air-quality protection with economic growth by incentivizing sources to undertake emissions-reducing activities as part of their proposed project. Despite asserting that the clarified Step 1 will worsen air pollution, Petitioners provided no reasoned basis for this claim during the rulemaking process and fail again to provide one here. The clarified Step 1 provides the best reading of the term "increases" based on the plain meaning of the definition of "modification," statutory purpose, and congressional intent.

Petitioners do not contend that their preference for excluding certain components in a proposed change from Step 1 represents the best reading of the Act. Rather, they present roundabout arguments to attempt to persuade this Court to vacate the Accounting Rule. This Court should not be persuaded. Petitioners forfeited their threshold argument because they did not raise during the comment period for the Accounting Rule that EPA's rationale for clarifying Step 1 should be based on the best reading of the Act. Regardless, EPA explained in the Accounting Rule that the clarified Step 1 was the best reading of the Act.

Petitioners' statutory arguments amount to improper attacks on actions EPA either took in the past and are not before this Court or did not take at all. Petitioners contend that under the statutory definition of "modification," sources must obtain a major source permit if, at any point in time, a part of a project is anticipated to significantly increase emission of pollutants. And Petitioners contend that the clarified Step 1 impermissibly allows sources to increase emissions before undertaking emission-reducing activities. However, this Court already rejected those arguments when it upheld EPA regulations that consider emissions over a years-long range for calculating whether a proposed project will result in an emissions increase. Further, Petitioners wrongly contend that the Accounting Rule excises "any . . . change" from the defined term "modification." But EPA took no action on the scope of "any . . . change" in the challenged actions. The two-step process, including the clarified Step 1 at issue in this case, applies only *after* "a[] . . . change" is established.

IV. Petitioners' record-based arguments fail too. Petitioners forfeited their argument regarding EPA's rationale that the substantially-related standard would address circumvention concerns. Although EPA requested comments on whether this standard should be mandated by regulation in its proposal to the Accounting Rule, Petitioners failed to comment on this issue until *after* EPA promulgated the Accounting Rule. And Petitioners' argument regarding EPA's recordkeeping

requirements ignores EPA's reasoned explanations as to why current regulatory and statutory requirements ensure that sources do not falsify projected emission-decreasing activities to avoid major New Source Review.

V. The Court should dismiss or deny the petitions for review.

## STANDARD OF REVIEW

To resolve the meaning of disputed statutory language, a court adopts the interpretation that it concludes is "best" "after applying all relevant interpretive tools[.]" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). In doing so, courts start with the "text of the statute" and read it "in [its] context and with a view to [its] place in the overall statutory scheme." *Jazz Pharms., Inc. v. Kennedy*, 141 F.4th 254, 261 (D.C. Cir. 2025).

EPA's interpretations, "'made in pursuance of official duty' and 'based upon . . . specialized experience,' 'constitute[] a body of experience and informed judgment to which courts and litigants [could] properly resort for guidance,' even on legal questions." *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)).

Under the Act, the Court reviews whether a challenged final action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 7607(d)(9)(A). This standard is narrow, and the Court cannot substitute its policy judgment for EPA's. *Motor Vehicle Mfrs. Ass'n v. State Farm*

*Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). EPA need only consider the relevant factors and articulate a rational connection between the facts found and the choices made. *Id.*; *see Loper Bright*, 603 U.S. at 391-92 (holding that judicial review of agency factfinding is deferential). Review is limited to the administrative record. 42 U.S.C. § 7607(d)(7)(A).

## ARGUMENT

### I. Petitioners lack standing for all four petitions for review.

Organizations, such as Petitioners, may assert organizational standing on their own behalf or associational standing on behalf of their members. *Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 100 (D.C. Cir. 2019). For either type of standing, Article III requires an injury-in-fact that is fairly traceable to the challenged action and is redressable by the requested relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Petitioners bear the burden of establishing standing in their opening brief. *Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 613 (D.C. Cir. 2019); Cir. R. 28(a)(7). They must either identify administrative record evidence or submit record evidence. *Twin Rivers*, 934 F.3d at 613. "[C]onclusory allegations" are insufficient. *Finnbin, LLC v. Consumer Prod. Safety Comm'n*, 45 F.4th 127, 137 (D.C. Cir. 2022).

Here, Petitioners identify no harm from the Reconsideration Denial or Withdrawal Notice, Br. 35-40, and seek no relief as to those actions, *id.* at 69.

Indeed, they make no argument regarding the lawfulness of those actions in their opening brief. *See generally id.* This Court should deny Petitioners' challenges to the Reconsideration Denial and Withdrawal Notice outright. *See Twin Rivers*, 934 F.3d at 615 (holding that petitioners forfeit arguments by not raising them in their opening brief). Further, Petitioners fail to meet their burden of establishing standing to challenge the Accounting Memo or the Accounting Rule.

### A. Petitioners lack associational standing.

To establish associational standing, Petitioners must prove that its members would "have standing to sue in their own right." *Twin Rivers*, 934 F.3d at 612 (quotation omitted). That means Petitioners must identify at least one member with standing. *Id.* Petitioners allege two injuries to their members from the Accounting Memo and Accounting Rule. Neither establishes standing.

First, Petitioners contend that their members are, or will be, substantively harmed by being subjected to greater air pollution from modifications to the major sources near them that have avoided, or may avoid, obtaining a major source permit because of the clarified Step 1. Br. 35-39. Any future injury must be "imminent, not conjectural or hypothetical." *Twin Rivers*, 934 F.3d at 612 (quotation omitted). However, Petitioners' members fail to demonstrate that major sources near them "will likely use [the Accounting Rule] for future projects." Br. 39 (citing Taylor Decl. ¶¶ 22-23, Zedler Decl. ¶¶ 7-8, 10-11, 20, 27). While these members identify

26

major sources that have announced plans to undergo modifications, the members do not demonstrate that these sources would apply the Accounting Rule and that by doing so, the source would avoid major New Source Review and would subject the members to greater air pollution. *See* Taylor Decl. ¶¶ 22-23, Zedler Decl. ¶¶ 7-8, 10-11, 20, 27. Petitioners' members thus fail to demonstrate imminent injury to establish standing.

As for the members' claims regarding initiated projects, Petitioners include a declaration from Katie McClintock, a former EPA employee who analyzed 12 permit applications for the major-source modifications identified by members, to support their assertions. *See* Br. 36-37; McClintock Decl. ¶¶ 2, 4-73. The declarant contends that those modifications avoided major New Source Review because of the Accounting Rule and that the sources' projects are anticipated to increase air pollution. *See, e.g.*, McClintock Decl. ¶¶ 6-9. She then asserts that if these projects were subject to major New Source Review, the source "would be required to reduce emissions." *See, e.g.*, *id.* ¶ 10; *see also* Br. 37.

The McClintock declaration contains key admissions and omissions that defeat members' standing. The declaration and supporting exhibits state that sources obtained a permit to construct each of the identified modifications under the relevant state's minor New Source Review program. *See, e.g.*, McClintock Decl. ¶¶ 4, 11, 19; *id.*, Ex. 2, Add331; Ex. 7, Add371-72; Ex. 10, Add401. Crucially, the

declaration fails to mention that these permits contain emission-control requirements. *See, e.g.*, *id.*, Ex. 1, Add324-29; Ex. 5, Add359 (identifying sections on "Control Devices" in the Mill Creek construction permit, which was omitted from the exhibit); Ex. 9, Add396; Ex. 17, Add448. And the McClintock declaration provides nothing to substantiate the conclusory assertions that these projects would have been subject to *greater* emission-control requirements had the sources undergone major New Source Review.

Further, the McClintock declaration omits Step 2 from its analysis to support its conclusion that these projects would be subject to major New Source Review absent the Accounting Rule. *See generally* McClintock Decl.; *see also* Br. 35-39 (omitting Step 2 in its standing argument). With or without the clarified Step 1, these identified sources may well *not* have been subject to major New Source Review if the analysis had reached Step 2. 40 C.F.R. § 52.21(a)(2)(iv)(A) (providing that a source is subject to major New Source Review only if its proposed project is calculated to cause a significant increase at Step 1 *and* at Step 2). Petitioners and the McClintock declarant fail to trace the members' alleged injury to the Accounting Rule, such that their alleged injury would be redressed with a favorable decision.

Second, Petitioners contend that the Accounting Rule denies their members' ability to comment on permits for modification of stationary sources. Br. 39. Their own declarations invalidate their assertion. In support of their purported harm,

Petitioners identify two members who contend that they were denied the opportunity to comment on two proposed modifications—one to the Kingston plant and another to the Cumberland plant. *Id.*; Arnett Decl. ¶¶ 10-11; Taylor Decl. ¶¶ 11, 33. However, Petitioners commented on those two proposed modifications. *See* McClintock Decl., Ex. 11, Add407-10 (permitting authority's response to Petitioners' comments on the proposed Kingston modification); Ex. 13, Add416-18 (permitting authority's response to Petitioners' comments on the proposed Cumberland modification). Petitioners thus fail to identify any procedural harm to their members.

In sum, Petitioners' members fail to establish standing to challenge the Accounting Memo or the Accounting Rule.

### B. Petitioners lack organizational standing.

Petitioners lack organizational standing to challenge EPA's decision not to revise recordkeeping requirements for major New Source Review. They assert that retaining the recordkeeping requirements as-is reduces their ability to fulfill their mission of disseminating air-quality information and requires diverting greater organizational resources to collect such data. Br. 39-40. For an organization to establish Article III injury, it must demonstrate a "concrete and demonstrable injury to [its] activities" that "perceptibly impaired the organization's ability to provide

29

services." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (quotations omitted). Petitioners fail to satisfy this requirement.

They simply assert that their organizations "*will* have to expend greater resources towards obtaining information about sources of air pollution in order to communicate threats about air pollution exposures to the public." Lewis Decl. ¶ 18 (emphasis added); Coates Decl. ¶ 8 (same); *see also* Br. 40 (citing these declarants). But that allegation alone is insufficient to demonstrate that the organization's "activities have been perceptibly impaired in any way." *Food & Water Watch*, 808 F.3d at 921. Their alleged injury is particularly speculative considering that the Accounting Rule has been in effect for five years and Petitioners do not attest that they have spent resources collecting air-pollution data that otherwise would have been provided by modified major sources. Petitioners thus lack organizational standing to challenge EPA's decision to not revise its recordkeeping requirements in the Accounting Rule.

## II. This Court lacks jurisdiction over Petitioners' statutory argument regarding the substantially-related standard.

In the Accounting Rule, EPA explained that applying the substantially-related standard would address commenters' concerns that the clarified Step 1 may result in sources circumventing major New Source Review. Accounting Rule, 85 Fed. Reg. at 74900/2. That standard was first established in the 2018 Aggregation Action and simply carried over into the Accounting Rule to respond to certain comments.

Accordingly, Petitioners' argument—that the Accounting Rule's consideration of multiple, substantially-related activities at Step 1 contravenes the Act, Br. 59-61—is time barred and unreviewable.

Section 7607(b)(1) of the Act requires challenges to a final action to be filed within 60 days after its publication in the Federal Register or, if "such petition is based solely on grounds arising after such sixtieth day," then "within sixty days after such grounds arise." 42 U.S.C. § 7607(b)(1). This time-bar is jurisdictional. *Med. Waste Inst. & Energy Recovery Council v. EPA*, 645 F.3d 420, 427 (D.C. Cir. 2011).

Although Petitioners challenged the Accounting Rule within 60 days after publication, Petitioners' argument amounts to an improper challenge of the substantially-related standard, which was established in the 2018 Aggregation Action that went unchallenged. *See* Accounting Rule, 85 Fed. Reg. at 74900/2 (reiterating the standard from the 2018 Aggregation Action). So Petitioners' requested relief—vacatur of the Accounting Rule—would have no effect on the substantially-related standard, as sources and permitting authorities may continue to apply that standard.

Further, Petitioners do not assert that their claim is based on the "solely on grounds arising after" the 60-day statutory period to challenge the 2018 Aggregation Action. 42 U.S.C. § 7607(b)(1). They have thus forfeited any argument that the Court has jurisdiction to review the substantially-related standard on this ground.

*NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) ("[A]rguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice.").

Thus, under the Act and this Court's precedent, Petitioners' challenge to this standard is time-barred. *See Med. Waste*, 645 F.3d at 427 (declining to reach challenge to an approach that was established in an earlier rulemaking).

But even if Petitioners' challenge were timely, the Accounting Rule's consideration of the substantially-related standard does not constitute a final action subject to judicial review. 42 U.S.C. § 7607(b)(1); *Valero Energy Corp. v. EPA*, 927 F.3d 532, 536 (D.C. Cir. 2019) ("[F]inality is jurisdictional."). An agency action is final if it (1) "marks the consummation of the agency's decisionmaking process"; and (2) establishes "legal consequences." *Valero*, 927 F.3d at 536 (quotation omitted). The second prong looks at the "actual legal effect (or lack thereof) of the agency action in question on regulated entities." *Id.* (quotation omitted). Put differently, if an agency action does not compel a specific response, then it is not final. *Id.*

EPA's substantially-related standard fails the second prong of the finality test. As EPA made clear, and Petitioners do not dispute, the standard imposes "no legal consequences for any regulated party." *Id.*; *see also Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 637-39 (D.C. Cir. 2019) (holding that guidance that lacks legal consequences is not a final action). Rather, "sources continue to have discretion in

defining the scope of the project." Accounting Rule, 85 Fed. Reg. at 74900/2; *see also* Br. 60 (acknowledging that the standard is discretionary).

Nor does it have any practical effect to constitute a final action subject to judicial review. *Valero*, 927 F.3d at 537 (recognizing that an action without formal legal force is final if it has a practical effect on regulated parties). As Petitioners point out, at least one permitting authority submitted a revised state plan for implementing New Source Review that did not include the substantially-related standard, and EPA approved it. 90 Fed. Reg. 21232, 21233/3 (May 19, 2025) (cited in Br. 67). Thus, as EPA's preamble statements make clear, EPA does not require sources or permitting authorities to apply the substantially-related standard. *Valero*, 927 F.3d at 537 (holding that EPA guidance was nonfinal even taking account of its practical effect because the document did not impose any practical burden on regulated entities).

Accordingly, this Court lacks jurisdiction over Petitioners' statutory challenge to the Accounting Rule's determination that the substantially-related standard would address commenters' concerns about major New Source Review circumvention.

III. **The Accounting Rule provides the best reading of the statutory term "increases."**

In the Accounting Rule, EPA clarified the two-step process for determining when a "change" or project "increases the amount of any air pollutant emitted." Accounting Rule, 85 Fed. Reg. at 74894/1-3 (quoting 42 U.S.C. § 7411(a)(4)).

Specifically, it clarified that Step 1 accounts for both increases and decreases in projected emissions from the change to ensure that only projects that actually increase emissions are subject to major New Source Review. *Id.* at 74894/2-3. The clarified Step 1 is grounded in the statutory text and reflects the best reading of the term "increases" because it is a "logical reading of the statute" that follows prior holdings of this Court and best furthers the purposes of the Act and New Source Review. *Id.* at 74896/2, 74897/2. And as detailed below, EPA provided this legal rationale in the record. *Contra* Br. 41-45.

Petitioners do not present their view of what the best reading of "increases" means. Instead, they make wide-ranging attacks against the Accounting Rule that misunderstand or are outside the scope of EPA's action. So EPA clarifies Petitioners' misunderstanding here.

Through prior rulemakings, EPA interpreted the term "increases" with a two-step process that complies with *Alabama Power*'s holding. In that case, this Court provided three foundational holdings regarding what constitutes an "increase."

First, this Court held that an "increase" does not result if the emissions increase is de minimis because applying the term literally could produce absurd results where any small increase would require major New Source Review. *Ala. Power*, 636 F.2d at 360, 400. Second, upon considering the purpose of New Source Review, this Court held that "increases" must account for the "change proposed for

a plant" including "the net effect of all the steps involved in that change." *Id.* at 401. Third, the Court provided temporal and spatial parameters for evaluating which emissions to include when measuring "increases." *Id.* at 400. Again, considering the purpose of New Source Review, the Court held that sources that increase pollution are "[e]xcept[ed]" from major New Source Review if they offset their emissions with substantially contemporaneous changes that occur at the same source. *Id.* at 400, 402. In so holding, this Court held that EPA had "discretion, within reason, to define which changes are substantially contemporaneous." *Id* at 402.

EPA's two-step process (as promulgated in 1980 and refined in 2002) applies these holdings. Both Steps 1 and 2 evaluate whether emissions are more than de minimis (i.e., "significant"). 67 Fed. Reg. at 80190/2. The two-step process also evaluates whether a change will result in a "net emissions increase." *See* 45 Fed. Reg. at 52698/3. Lastly, pursuant to its reasonable discretion, EPA defined substantially contemporaneous as "[a]ny other increases and decreases" that occur within five years of the proposed change and are creditable. *Id.* at 52736/1. And EPA considers contemporaneous offsets at Step 2 of the process consistent with *Alabama Power*'s description of this element as an "[e]xception[]" to the general rule that sources that increase pollution will generally need a major source permit. 636 F.2d at 400; 67 Fed. Reg. at 80197/2-3 (explaining that if a source calculates that "a significant emissions increase will result from a modification, you have the

option of taking into consideration any contemporaneous emissions changes that may enable you to 'net out' of review"); *see also* 45 Fed. Reg. at 52698/3 (explaining the same).

Accordingly, under the two-step process, Step 1 calculates the "increase in emissions from a particular . . . change." 67 Fed. Reg. at 80275/3 (codified at 40 C.F.R. § 52.21(b)(3)(i)(A)); *see also* 45 Fed. Reg. at 52698/3 (providing that this provision considers whether the "change in question would itself result in an increase" in emissions). If the emissions increase at Step 1 is "significant," then the source proceeds to Step 2 to consider whether that increase combined with other contemporaneous emission changes results in a significant net emissions increase and requires the source to undergo major New Source Review. 45 Fed. Reg. at 52698/3; 67 Fed. Reg. 80197/2-3; RTC 67, JA____ (explaining that EPA viewed Step 2 to reflect changes other than the project under consideration in the 2002 rule); *contra* Br. 50 n.12 (wrongly asserting that the steps involved in a particular change are considered at Step 2).

In the Accounting Rule, EPA clarified that Step 1 considers the full scope of emissions anticipated by the proposed project, not just the project's anticipated increases. Accounting Rule, 85 Fed. Reg. at 74890/2. EPA did not define "any . . . change" or revise how emission "increases" are calculated, contrary to Petitioners' arguments and suggestions. Petitioners' statutory arguments lack merit.

**A.    The Accounting Rule squarely aligns with the plain text of the term "increases."**

Accounting for both emission increases and decreases of a proposed project squarely aligns with the plain text of the phrase "increases the amount of any air pollutant emitted by such source" and this Court's controlling decision in *Alabama Power*, which addressed the best reading of the term "increases" within the definition of "modification."

As a matter of plain meaning and under this Court's precedent, the Act's definition of "modification" has two elements. *New York I*, 413 F.3d at 11 (holding that this definition requires "*both* a change . . . *and* a resulting increase in emissions"). First, sources must identify "any . . . change." 42 U.S.C. § 7411(a)(4). Second, that change must "increase[] the amount of any air pollutant emitted" by the source or "result[] in the emission of any air pollutant not previously emitted." *Id.* This means that the change, however it is defined, must result in more air pollution than the status quo. That makes sense in the context of the statutory scheme. Congress enacted the New Source Review program to ensure federal air-quality standards are achieved or maintained. *Id.* § 7410(a)(2)(C). Accordingly, Congress intended sources to obtain a major source permit "only where industrial changes might increase pollution in an area" and thereby affect the area's ability to maintain or attain federal air-quality standards. *Ala. Power*, 636 F.2d at 401.

Step 1 focuses on the second element of a "modification." And the interpretation of Step 1 provided in the Accounting Memo and Accounting Rule best comports with the plain meaning of the term "increases." It clarifies that whether a proposed project results in an "increase[]" in emissions should be based on consideration of *all* the anticipated emissions changes from the project, not just the parts of the project anticipated to increase emissions. *See* Accounting Rule, 85 Fed. Reg. at 74897/1; RTC 8, JA____ (explaining that the clarified Step 1 seeks to capture "changes that increase actual emissions" (quoting *New York I*, 413 F.3d at 40)); RTC 110, JA____ (explaining that the clarified Step 1 takes "account of the true emissions impacts of the project itself").

Step 1, as clarified in the Accounting Memo and Accounting Rule, likewise best aligns with this Court's holding that "increases" must account for the "change proposed for a plant" including "the net effect of all the steps involved in that change." *Ala. Power*, 636 F.2d at 401. This Court reasoned that such an interpretation was most consistent with the purpose of major New Source Review. *Id.* And in so holding, the Court illustrated how assessing "increases" on a unit-by-unit basis would contravene the purpose of this program. *Id.* Because "alterations of almost any plant occur continuously," a narrow reading of "increases" that does not account for a change's net emissions would require New Source Review for "routine alterations of a plant; a new unit would contribute additional pollutants,

38

these increases could not be set off against the decrease resulting from abandonment of the old unit, and thus the change would become a 'modification' subject to [major New Source] review." *Id.* Not only would this result be "extremely burdensome," but it would require major New Source Review for proposed projects that are not anticipated to increase air pollution. *Id.*

There is no textual support (and Petitioners provide none) for Petitioners' approach. Under Petitioners' preferred version of Step 1, anticipated decreases, like the abandonment of an old unit, could only be considered at Step 2. This approach would prohibit full consideration of the project at Step 1. *Contra Ala. Power*, 636 F.2d at 401. And it would lump the emission-decreasing aspects of the project into Step 2, which is intended to provide an exception to the permitting requirement where a *project* is found to have a significant increase at Step 1. *See id.* at 400; 40 C.F.R. § 52.21(b)(3)(i)(B). In deferring consideration of a project's emission-reducing components until Step 2, sources would be disincentivized to propose projects that reduce emissions. *See* Accounting Rule, 85 Fed. Reg. 74894/3. Sources would have to choose whether to conduct a burdensome Step 2 analysis, subject the project to New Source Review, or abandon the project. *See id.* Thus, Petitioners' preferred interpretation conflicts with the plain text of "modification," this Court's binding precedent, and the purpose of major New Source Review.

Further, Petitioners' three textual arguments misunderstand the clarified Step 1.

First, Petitioners contend that the Accounting Rule results in an inconsistent interpretation of "modification" by evaluating emissions at Step 1 on a unit-by-unit basis while evaluating Step 2 emissions on a source-wide basis. Br. 47-49. Not so. Like Step 2, the clarified Step 1 continues to evaluate emissions source-wide by considering the "full impact of a particular project." RTC 43, JA____. The material difference between Steps 1 and 2 is that Step 1 considers the impact of one project while Step 2 considers the impact of *multiple* projects. *See* 40 C.F.R. § 52.21(b)(3)(i)(A)-(B) (summing the emissions effect of a "particular" project and "other" projects in calculating whether there is a net emissions increase at Step 2). But whether a source assesses one or multiple projects, the emissions impact of each project is evaluated in the same manner—on a source-wide basis. *See id.* § 52.21(b)(3)(i) (providing that subparagraph (A), which corresponds to Step 1, and subparagraph (B), which corresponds to Step 2, include emissions increases and decreases "at" the "stationary source"). There is no inconsistency in the scope of what is considered at the clarified Step 1 and Step 2.

One might think of this as analogous to a homeowner pursuing a kitchen-renovation project. At the revised Step 1, one would look at all steps that must be taken within the entire home to renovate the kitchen—e.g., replacing the cabinets

and appliances, relocating pipes and electrical lines to move fixtures, and increasing the home's electricity capacity to convert a natural gas-fired range to electric. Then, at Step 2, the homeowner would consider other projects outside of the kitchen remodel that had been taken in a contemporaneous timeframe within the house—e.g., bathroom remodel or adding a deck. So at both steps, the spatial scope is house- (or source-) wide.

In any event, Petitioners' alleged inconsistency would be greater under their preferred approach at Step 1. Under their approach, Step 1 would consider only the emissions-increasing parts of a proposed project, which encompasses a smaller area of the source than that considered under the clarified Step 1. Thus, any alleged inconsistency in scope would not justify Petitioners' preferred approach.

Second, Petitioners contend that the clarified Step 1 excises "any" out of the definition of "modification" because it results in sources evaluating "other," "unrelated" "projects" at Step 2. Br. 49-52. This argument misunderstands the two-step process and purports to challenge Step 2. The two-step process applies only *after* "any" change is identified. Once identified, then the process applies a comprehensive, source-wide approach to determine whether that proposed change results in an "increase" in emissions by accounting for net emissions from (1) the particular project and (2) contemporaneous offsetting projects.

In misunderstanding the two-step process, Petitioners improperly attempt to challenge Step 2. That challenge is time-barred and unreviewable because EPA promulgated Step 2 in 1980. 42 U.S.C. § 7607(b)(1); *see supra* Arg. II (explaining that this time-bar is jurisdictional). Since 1980, EPA regulations have provided that Step 2 accounts for "[a]ny *other* increases and decreases in . . . emissions at the [major stationary] source that are contemporaneous with the particular change . . . ." 45 Fed. Reg. at 52736/1 (codified at 40 C.F.R. § 52.21(b)(3)(i)(B) (emphasis added)); *see also* RTC 67, JA___ (explaining that EPA viewed Step 2 "to reflect changes other than the project under consideration" in the 2002 rule). Contrary to Petitioners' assertion, this text in EPA's regulations did not previously consider other steps involved in a particular change at Step 2. Br. 50 n.12 (wrongly citing 45 Fed. Reg. at 52698-99). Indeed, in that referenced rule, EPA provided a hypothetical example of how its regulations work. 45 Fed. Reg. at 52704/3-05/3. That example clearly illustrates that Step 2 considered other, unrelated changes. *Id.* at 52705/2 (explaining that if a source decreased emissions by adding control equipment one year, then it may use those emissions to offset anticipated emission increases from a modification proposed the next year). In short, the Accounting Rule does not excise "any" from the Act because it applies after a change is identified.

Third, Petitioners contend that the clarified Step 1 allows sources to significantly increase emissions before undertaking emissions-reducing activities

violating the plain-text requirement that any change that increases emissions must obtain a major source permit. Br. 52-56. Under Petitioners' position, sources must obtain a major source permit if, at any point in time, the source is anticipated to emit significant pollutants. In doing so, Petitioners ignore how emissions are calculated and repeat an argument this Court already rejected.

In 2002, EPA promulgated regulations for calculating a proposed project's emissions. It is generally the difference between (a) the maximum annual rate that the project is anticipated to emit in any one of the five years following project completion and (b) the two-year average rate calculated during any ten-year period immediately before construction. 67 Fed. Reg. at 80195/1, 80196/2; 40 C.F.R. § 52.21(a)(2)(iv)(C), (b)(41), (b)(48). Simply put, "increases" are calculated by considering a five-year forward-looking period and a ten-year lookback period.

This Court upheld EPA's method of calculating increases based on a range in time because it appropriately accounts for "operational fluctuations associated with normal business cycles." *New York I*, 413 F.3d at 25. In doing so, this Court rejected Petitioners' argument that such range-based calculations unlawfully exclude the word "any" from the definition of "modification" by allowing some emissions-increasing changes to avoid major New Source Review. *Id.* at 27. EPA did not define what constitutes "any" change. Rather, "'any' change that increases emissions," as calculated pursuant to the regulations, "still triggers [major New

Source Review].” *Id.* Ultimately, Petitioners take issue with regulations codified in a prior rulemaking, which this Court already resolved. Their argument is time-barred and foreclosed by precedent. 42 U.S.C. § 7607(b)(1); *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc) (holding that a panel lacks authority to overrule another panel of the court).

Petitioners' argument that EPA regulations require contemporaneous decreases to occur prior to an increase in emissions (i.e., be enforceable and creditable) is irrelevant. *See* Br. 53. Pursuant to this Court's precedent, EPA imposed certain requirements to contemporaneity within its reasoned discretion in 1980. *See Ala. Power*, 636 F.2d at 402; 45 Fed. Reg. at 52700/3. But that does not mean that emissions calculated at Step 1 must satisfy the same requirements for emissions calculated at Step 2. Each Step is "distinct." Accounting Rule, 85 Fed. Reg. at 74898/2.

And EPA appropriately reasoned that enforceability should not be a requirement for projected emission decreases calculated at Step 1. *Id.* at 74898/2-99/1; *contra* Br. 44, 53. Because Step 2 allows sources to use emissions decreases from another project to avoid major New Source Review, it is important that those decreases are enforceable to ensure that the reduction is real and permanent. Accounting Rule, 85 Fed. Reg. at 74898/2. However, Step 1 considers emissions from only the particular project in question, and those emissions are already subject

to various regulatory requirements to "hold sources accountable" for those anticipated emissions. *Id.* at 74898/2-3. For example, EPA regulations provide that regardless of any preconstruction projections, a statutory modification results if the project actually results in a significant emissions increase and a significant net emissions increase. *Id.* at 74898/3; 40 C.F.R. § 52.21(a)(2)(iv)(B). So if a source underestimates its projected emissions, it can be held accountable for that error if its emissions after the construction actually exceed the triggering thresholds. Thus, EPA reasonably concluded that its regulations have sufficient mechanisms to ensure that projected emissions are enforceable and that no rationale supports treating projected emission decreases differently from projected emission increases. Accounting Rule, 85 Fed. Reg. at 74898/3-99/1.

In short, the Accounting Rule clarifies Step 1 to squarely align with the plain text of "increases" and this Court's precedent.

### B. The Accounting Rule best balances major New Source Review's goal of preserving air quality and promoting economic growth.

The Accounting Rule best advances the purpose of major New Source Review by balancing the sometimes competing interests of preserving air quality with promoting economic growth. *New York I*, 413 F.3d at 23. The Accounting Rule "incentivize[s] sources to undertake emissions-reducing efficiency-improving projects where they would otherwise not been incentivized to do so." RTC 57, JA____. And the Accounting Rule ensures that major sources are not burdened with

major source permitting when they propose a project that would not significantly increase emissions. Accounting Rule, 85 Fed. Reg. at 74897/2; RTC 102, JA____. As industry groups shared, emission-reducing activities—such as reducing or shutting down higher-emitting equipment or replacing outdated technologies—are often not, by themselves, economically viable. Chamber of Commerce Comments 4, EPA-HQ-OAR-2018-0048-0081, JA____. Such activities, however, become economically viable if they are considered a part of the proposed project, as those activities can alleviate the need for costly and burdensome Step 2 analyses and major New Source Review. *Id.* at 5, JA____. Indeed, several commenters shared projects with emissions-reducing activities that would have likely proceeded had the Accounting Rule been promulgated. RTC 57, JA____.

Petitioners do not contest this record. Rather, they assert that the clarified Step 1 contravenes the purpose of major New Source Review because major sources may delay their emission-reducing activities until after they undergo significant emissions-increasing activities. Br. 53-58. And in doing so, Petitioners assert that communities will suffer from air-pollution levels that exceed the federal air-quality standards during that intervening period. *Id.* at 58.

Petitioners' concern is hypothetical and unsubstantiated. They provide no record basis for their assertion. *See* RTC 57, JA____ (explaining that there was "no evidence to suggest that the [Accounting] rule will result in greater increases in

emissions"); *id.* 116, JA____ (stating the same).  Further, the Act's statutory scheme does not support Petitioners' hypothetical.  Generally, states implement the New Source Review program.  Accounting Rule, 85 Fed. Reg. at 74892/1.  And they have a strong interest to ensure that no proposed project will worsen air pollution, as areas in the state that exceed or continue to exceed federal air-quality standards are subject to increasingly stringent emission-control requirements.  *See supra* Background I.A.  That is because permitting authorities must determine whether a proposed project might increase emissions and must obtain either a major or minor New Source Review permit with emission limits to prevent any statutory consequence for harming air quality.  *See* 42 U.S.C. § 7410(a)(2)(C); *see also* RTC 82, JA____.  Petitioners ignore the role of the minor New Source Review program and provide no reason why states would approve projects that worsen the state's air quality and subject the state to more stringent emissions-reduction requirements.  *See* Br. 58.

Accordingly, the clarified Step 1 provides the best reading of "increases" in the defined term "modification," as it conforms to the plain text and best serves the purposes of New Source Review based on known business practices.

### C. Petitioners' remaining statutory arguments lack merit.

#### 1. Petitioners forfeited their threshold argument; regardless, EPA explained that the Accounting Rule comports with the best reading of the statute in the record.

Petitioners are barred from raising their threshold statutory-interpretation argument—that EPA relied solely on statutory ambiguity to interpret "increases" in the Accounting Rule. Even if the Court considers Petitioners' argument, EPA explained in the Accounting Rule that the clarified Step 1 provides the best reading of the statute and advances that same position here. *Contra* Br. 41-45.

Under the Act, "[o]nly an objection to a rule or procedure which was raised with reasonable specificity during the period for public comment . . . may be raised during judicial review." 42 U.S.C. § 7607(d)(7)(B). This Court enforces this provision "strictly." *NRDC v. EPA*, 571 F.3d 1245, 1259 (D.C. Cir. 2009) (quotation omitted).

Contrary to Petitioners' assertion, Petitioners did not raise EPA's alleged reliance on statutory ambiguity in their comments on the Accounting Rule. Br. 43; *see generally* Pet'rs Accounting Rule Comments, EPA-HQ-OAR-2018-0048-0079, JA____-__. Thus, their argument is barred under 42 U.S.C. § 7607(d)(7)(B).

Petitioners raised this issue in their comments to the proposed revision to the Accounting Rule that EPA withdrew. *See* Br. 43; Pet'rs Proposed Revision Comments 41, EPA-HQ-OAR-2022-0381-0060, JA____. That comment is not

within the scope of review for the Accounting Rule. 42 U.S.C. § 7607(d)(7)(B). It is only within the scope of review for the Withdrawal Notice, which Petitioners do not argue was unlawful. Br. 69. If Petitioners are purporting to challenge the Withdrawal Notice, their vague attempt to do so is cursory and forfeited. *Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 414 (D.C. Cir. 2024) ("An argument left so naked is tantamount to failing to raise it." (quotation omitted)).

Regardless, even if the Court considers Petitioners' forfeited argument, the record clearly demonstrates that EPA interpreted "increases" consistent with *Loper Bright*'s directive—EPA provided its statutory interpretation based on the plain text, statutory scheme, and congressional intent. *See supra* Arg. III.A, III.B; *Loper Bright*, 603 U.S. at 400. EPA acknowledged the D.C. Circuit's holding that "increases" is ambiguous and that, based on the law at the time, EPA had authority to choose a reasonable interpretation. Accounting Rule, 85 Fed. Reg. at 74894/2, 74897/2. However, EPA did not ultimately rely on this ambiguity to support its clarification of Step 1. Nor did EPA simply provide a reasonable interpretation.

Rather, EPA explained that the Accounting Rule is the "best reading of [the Act]." *Id.* at 74899/3; *see also Loper Bright*, 603 U.S. at 400 (holding that courts must determine the "best reading" of the statute). For example, EPA stated that the clarified Step 1 "is grounded in the principle that the 'plain language of the [Act] indicates that Congress intended to apply [New Source Review] to *changes that*

*increase actual emissions.*'" RTC 8, JA____; *see also* Accounting Rule, 85 Fed. Reg. 74899/3 (stating similarly). EPA also stated that the clarification of Step 1 "better comports with the court's ruling in *Alabama Power* . . . and the Act." RTC 31, 114, JA____, ____. This best reading of the Act is the same argument EPA advances now. *See supra* Args. III.A., III.B. Thus, Petitioners wrongly contend that EPA relied on agency discretion to promulgate the Accounting Rule and violated the *Chenery* doctrine. Br. 42-43 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that courts must review agency action on the grounds invoked by the agency)).

In sum, Petitioners' threshold argument is time-barred and lacks merit.

### 2. EPA took no action on the scope of "any . . . change" in the Accounting Rule.

Petitioners wrongly contend that consideration of multiple, substantially-related activities at the clarified Step 1 contravenes the Act's requirement that "any" change causing an increase in emissions constitutes a "modification." Br. 49-51, 55-56, 59-61. As discussed at Argument II, Petitioners' argument regarding the substantially-related standard is unreviewable for multiple reasons.

Nonetheless, this argument lacks merit. The two-step process, including the clarified Step 1, interprets "increases" only, and this process applies only after "any . . . change" is determined. Even before EPA promulgated the Accounting Rule, a source could propose a "change" with multiple parts. What has changed is that EPA

clarified that Step 1 accounts for both the projected increases and decreases in emissions from all parts of that particular change, as opposed to solely the parts that are projected to cause increases. So the Accounting Rule does not excise "any" from the text defining "modification," as Petitioners erroneously contend. Br. 50-52, 55.

Even if Petitioners' argument was relevant to EPA's action, Petitioners' position contravenes *New York v. EPA* (*New York II*), 443 F.3d 880 (D.C. Cir. 2006) and *Alabama Power*. Under Petitioners' preferred version of Step 1, "any . . . change" includes only those parts of a project that increases emissions, but not those parts that decrease emissions. *See* Br. 20-21, 54. Take the example provided in Petitioners' brief at 54 n.13: Petitioners would group all new units constructed into one project for considering whether the project results in a significant emission increase at Step 1 but would exclude each existing unit retired and the installment of a scrubber from its definition of a project, or "any . . . change." That defies *New York II*'s holding that a "modification" should include any "common-sense usage of the word 'change.'" 443 F.3d at 888 (quotation omitted). There is no common-sense or text-based rationale for separating a project into those parts that are anticipated to decrease emissions and those that are anticipated to increase emissions.

Petitioners' position also contravenes *Alabama Power* because if "a new unit would contribute additional pollutants, these increases could not be set off against

51

the decrease resulting from abandonment of the old unit." 636 F.2d at 401. This court rejected that result because Congress intended only projects that might result in actual emission increases to undergo major New Source Review. *Id.* Thus, a "modification" subject to major New Source Review must consider emissions for "any change proposed" and "all the steps involved in that change." *Id.* The Accounting Rule best applies this requirement by considering all steps involved in a particular change.

In sum, the Accounting Rule provides the best reading of the term "increases" and offers no interpretation of the term "any . . . change."

## IV. EPA reasonably addressed circumvention concerns.

### A. Petitioners forfeited their argument regarding EPA's decision to not mandate the substantially-related standard; in any event, EPA reasonably explained its decision.

Petitioners forfeited their argument—that EPA unreasonably determined that its non-binding substantially-related standard would address circumvention concerns, Br. 67—by failing to raise it during the rulemaking process. 42 U.S.C. § 7607(d)(7)(B); *see also supra* Arg. III.C.1. In its proposal to the Accounting Rule, EPA requested comment on whether it should require sources to apply the substantially-related standard. 84 Fed. Reg. at 39251/1. However, EPA received no comments from Petitioners (or another party) on this issue. *See, e.g.*, Pet'rs Accounting Rule Comments, JA\_\_\_\_-\_\_. Indeed, Petitioners acknowledge that they

raised this issue only *after* EPA promulgated the Accounting Rule in their petition for reconsideration. Reconsideration Petition 10, EPA-HQ-OAR-2022-0381-0014, JA____. Thus, Petitioners' own representation cuts against any argument they could make in reply that they raised this issue during the rulemaking process. *NRDC v. EPA*, 559 F.3d 561, 564 (D.C. Cir. 2009) (holding that petitioner's reconsideration petition cut against its litigation position that it timely raised the issue).

Indeed, in denying their reconsideration petition, EPA explained that Petitioners failed to demonstrate reconsideration was mandatory because Petitioners had ample opportunity to raise their issue during the comment period. Reconsideration Denial Letter 5-7, JA____-__. Not only have Petitioners forfeited their substantially-related argument here, but Petitioners forfeited any argument regarding whether EPA's denial of their reconsideration petition was unlawful by failing to raise it in their opening brief. *Twin Rivers*, 934 F.3d at 615.

Even if this Court considers Petitioners' argument, EPA's decision to not mandate the substantially-related standard is well supported by the full administrative record for these consolidated cases. EPA explained that it would be unreasonable to impose the substantially-related standard as a "bright line" requirement because defining the scope of a project is heavily case-specific and fact-dependent, such that the substantially-related standard may not neatly fit into each permitting situation. 2018 Aggregation Action, 83 Fed. Reg. at 57331/1. EPA's

explanation was reasonable. As the Supreme Court held, an agency may address a problem "on a case-to-case basis" where the problem is "so specialized and varying in nature as to be impossible of capture within the boundaries of a general rule." *Chenery*, 332 U.S. at 203; *see also NLRB v. Bell Aerospace Co. Div. of Textron Inc.*, 416 U.S. 267, 293 (1974) (holding the same).

Further, EPA explained that many permitting agencies had already implemented a standard that is similar to the substantially-related standard. 2018 Aggregation Action, 83 Fed. Reg. at 57333/1. While Petitioners cite an out-of-record, 2025 action where a state did not adopt the substantially-related standard, Br. 67, that post-rulemaking example is "beyond the current record for judicial review." *New Jersey*, 989 F.3d at 1050 (citing 42 U.S.C. § 7607(d)(7)(A)). Even if it were relevant, that action does not demonstrate whether the state adopted a standard dissimilar to the substantially-related one. *See* 90 Fed. Reg. at 21233/3.

In sum, Petitioners forfeited their substantially-related argument, and even if this Court considers their argument, EPA provided a reasoned explanation.

**B. EPA reasonably explained that retaining its recordkeeping requirements was appropriate.**

EPA reasonably explained that clarifying Step 1 did not require revising the regulations' recordkeeping requirements because they adequately ensure that sources comply with major New Source Review. Petitioners' argument is premised on the faulty assumption that sources will falsely include emission-decreasing

activities at Step 1 because (a) in doing so, their projected emissions will fall below the 50% significance-level threshold to trigger recordkeeping requirements, and (b) without those records to keep them in check, they can evade major New Source Review. Br. 62-64.

EPA explained that the Accounting Rule only clarifies those emissions that are considered at Step 1 and does not change the major New Source Review requirements that address circumvention concerns at each stage of the modification process. *See* Accounting Rule, 85 Fed. Reg. at 74902/3-03/1. To demonstrate whether a proposed modification would trigger major New Source Review, sources must project their emissions based on "all relevant information, including . . . the company's expected business activity and the company's highest projections of business activity." 40 C.F.R. § 52.21(b)(41)(ii)(A); *see* Accounting Rule, 85 Fed. Reg. at 74902/3-03/1. So sources cannot arbitrarily project emissions below the applicability level to avoid the recordkeeping requirements. Accounting Rule, 85 Fed. Reg. at 74903/1. Further, the regulations make clear that regardless of any preconstruction projections, a major modification results if emissions actually exceed the significance threshold. RTC 90, JA____ (citing 40 C.F.R. § 52.21(a)(2)(iv)(B)). Accordingly, if any emission decreases are overstated (or increases understated), then the source may be subject to liability based on its actual emissions after the change. *Id.* And if a source were to purposefully game its

emissions calculations, it may be subject to, not only civil, but criminal liability. *Id.* Given these regulations already in place to ensure compliance with major New Source Review, EPA explained that there is no basis to track emissions increases and decreases differently under its recordkeeping requirement. *Id.*; Accounting Rule, 85 Fed. Reg. at 74902/3-03/1.

Additionally, EPA explained that other records will be available to support compliance with and enforcement of New Source Review. Accounting Rule, 85 Fed. Reg. at 74902/3. Specifically, EPA reasoned that the "most" projects not required to obtain a major source permit "will be subject to minor [source] permitting requirements," which will document emission decreases and increases. *Id.* at 74903/1; RTC 45 & n.52, JA____.

Petitioners fail to engage with EPA's rationale for retaining the recordkeeping requirement in the Accounting Rule. *See* Br. 64 (wrongly asserting that "EPA offer[ed] no reason" why sources would comply with major New Source Review). They focus on EPA's initial rationale for promulgating the recordkeeping requirement without considering EPA's rationale for retaining the requirement as written. *See id.* at 62-63. Or they vaguely reference EPA's proposed reconsideration of the Accounting Rule, *id.* at 63-64, which is not a final action subject to this Court's jurisdiction, 42 U.S.C. § 7607(b)(1).

Petitioners also mischaracterize this Court's decision on these recordkeeping requirements. Br. 64-65 (citing *New Jersey*, 989 F.3d at 1050). This Court made no holding, even in part, related to the recordkeeping requirement's omission of projected emission decreases. The issue was whether the 50% trigger improperly accounted for emissions included at Step 2. *New Jersey*, 989 F.3d at 1050. This Court dismissed this issue because Step 2 emissions were inapplicable to the recordkeeping requirements. *Id.* Step 2 emissions remain inapplicable to the recordkeeping requirements. *New Jersey* is inapposite here.

Lastly, Petitioners' "inchoate argument made only in a footnote" regarding the lack of information obtained from minor source permitting is forfeited. *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 766 n.2 (D.C. Cir. 2022); Br. 65 n.15. Regardless, Petitioners only reference EPA's proposed reconsideration of the Accounting Rule, in which EPA stated that minor source permitting *may* be insufficient to verify a source's emissions. Br. 65 n.15 (citing 89 Fed. Reg. at 36884/3-85/1). And EPA explained in the Withdrawal Notice that its concerns were unfounded and that it would be unreasonable to add recordkeeping requirements to obtain merely theoretical benefits while burdening regulated sources. Withdrawal Notice, 90 Fed. Reg. at 34207/3-08/1. Petitioners do not dispute EPA's explanation. In fact, they raised no issue regarding the Withdrawal Notice in their opening brief and forfeited any challenge to that action. *See Twin Rivers*, 934 F.3d at 615.

EPA reasonably retained its recordkeeping requirement in the Accounting Rule.

## CONCLUSION

The Court should dismiss or deny the petitions.[4]

Submitted on January 26, 2025

Of counsel:

BRIAN DOSTER
U.S. Environmental Protection Agency
Office Of General Counsel
Washington, D.C.

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*

*/s/ Jin Hyung Lee*
JIN HYUNG LEE
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
202.598.7264
jin.hyung.lee@usdoj.gov

---

[4] Were the Court to disagree, EPA requests the chance to brief remedies because remand without vacatur may be warranted. *See Clean Wis. v. EPA*, 964 F.3d 1145, 1177 (D.C. Cir. 2020).

# CERTIFICATES OF COMPLIANCE AND SERVICE

I certify that this brief complies with Fed. R. App. P. 32(a)(5) and (6) because it uses 14-point Times New Roman, a proportionally spaced font.

I also certify that this brief complies with the Court's October 2, 2025 order because by Microsoft Word's count, it has 12,960 words, excluding the parts of the brief exempted under Rule 32(f).

Finally, I certify that on January 26, 2026, I electronically filed this brief with the Court's CM/ECF system, which will serve each party.

*/s/ Jin Hyung Lee*
JIN HYUNG LEE

Counsel for Respondents